Americas The issue in this case is whether the trial court abuses discretion in finding that under Pioneer's standard code of debauchery. We have a final order in this case because the statute of limitations is run, is that correct? So the court was right to use 60B to analyze this? That's correct. There's no dispute between the parties. Okay. Well, Judge Simandoe appeared to say in his opinion that he thought you were trying to make a strategic decision to add some new defendants and some new claims for which the statute of limitations had already run and you were hoping to get them to relate back. Is that what was going on in this case? Yes, Your Honor. The counsel who handled the case said to the district court matter, we have fully requested the EEOC administrative team. She attended the documents released and discovered that there was the potential for additional state law claims of defamation against supervising employees of the defendant company. And she was at the time over the clock for filing her federal claim because the way to sue had been issued and she had 90 days to file. So it was a strategic decision on her and in retrospect, it probably wasn't the wisest decision. But whether it was the issue of inexcusable neglect is not the issue that it absolutely does not. With respect to whether her claims were tied by the statute of limitations, she argued at the district court matter that the statute began to run once she discovered that, which was once she received the documents to federal responsibility for the request for the EEOC. First of all, we have an abuse of discretion standard here. And secondly, she made a strategic decision that turned out she was wrong and she never filed a complaint. She never filed a proposed amended complaint. In fact, she seemed to have made a series of misjudgments on this matter. I would argue with respect for that. I think she made a serious judgment call that appears to me at a worst. It's a mistake. I don't think that this rises to the level of someone who has counsel and is just ignoring court orders. I think the record demonstrates that in November 2010, when the judge issued the notice saying that he would dismiss the case, she actually filed an affidavit and said that he has to send a notice to the New Jersey District Court. She responded the very exact day. And she outlined the reasons explaining why she did what she did. And we can question them. And I thought they disagreed with them as well. But to deprive four plaintiffs of a hearing on the merits of their case I think is not consistent with the standard in the court. And I think there's nothing in the record that demonstrates or supports the finding of the court that she did nothing more than make a mistake in judgment that a practitioner makes. Although in the affidavit, if I recall correctly, she said that part of the fault, if that's the right word, attached to the plaintiffs themselves. She said she was partly at fault and they were partly at fault in not providing the information. So it seems like there was a convergence of some missteps in this matter.  I think one of the elements of Alba is whether it was in the control of the group and whether it was in Alba in the record that Alba stated that it was on her. And then it was the fact that the demand was lower than anticipated because she represents four plaintiffs and she had a difficult time getting information from those four plaintiffs. And that took longer. And I think what's important to note is that in the affidavit that she submitted the same day, November, in response to the judge's notice, she specified that a complaint would be filed within, an amended complaint would be filed within two months. I don't think that that's someone who, in looking at some of the other case law, demonstrates such a disregard for the court's procedures. Again, I think that it was just an error in judgment that she made. I mean, she actually, that was in November, and she actually did serve all those with the complaint on January 25th of 2001. So we did get the complaint. So you're focusing on one of the four elements of the court. Of course, from there, the standard has to consider whether it was in the movement's control. I think that, despite that acknowledgement, most of it rests with the plaintiff's counsel because the plaintiff's counsel did provide an affidavit to the court in response to the motion to vacate that she had trouble getting information. I think that that is within the control of the plaintiff's counsel. I think the plaintiff's counsel could, and I'm using this as an exaggerated example, but she could not go far to the plaintiff's, knock on the door and say, hey, what information do you need from me right now that I discovered the EEOC documents in order to amend the complaint because I've got to do it online with a gun? I think that is building that into a separate situation where it is mostly on the fault of the attorney. And I think if you recognize it's mostly on the fault of the attorney, I think it's a drastic measure. Even if the abusive discretion standard review of the record demonstrates that the plaintiff should be deprived of their right to litigate. Just, if I could touch on some of the other issues that faculty in the law is expected to gauge with prejudice in the other parties. One example is the standard argument, which is that, you know, what the purpose of the statute of limitations claims are, that they should have to defend against stale claims, documents that are difficult to find, which is difficult to locate and to litigate. We are pleased that there is no consideration given to whether there is going to be actual prejudice suffered. I think, with respect to stale claims, I think it's important to recognize that there was an EEOC proceeding before this case was initiated with the federal court. So, law means was placed on notice that there was litigation. Presumably, law means would investigate that claim just as if it were a claim filed in the federal court. So, I think the surprise and the injustice of, you know, that the statute of limitations contemplates in trying to prevent people from establishing stale claims is tempered a bit when we consider the EEOC proceeding had already taken place. With respect to documents, we provided an example, I believe, from the wage-bearing recollection law, just as an example to say that there is another note that these documents had been preserved because of the EEOC proceeding. And, I think, with respect to what that means in terms of the danger of prejudice, the actual danger is that none of it is faked. And, we understand the EEOC process. For those who want to assume that it triggers the writing of the statute of limitations. So, sometimes, and I had a number of cases before the EEOC. Cases before the EEOC sometimes take three, four, five years before the EEOC investigates and issues any type of decision. Of course, it's almost like doing another review in a federal district court level because then they're fighting and the cause of the law doesn't really matter. But, I think, if the case continues, yeah, it can take three, four years. There have been cases that take that long in the EEOC model. The notice of that decision can be requested and obtained via request by the parties. So, to argue that the time period of when she should have said the complaint, which expired in October 30, 2010, to when she got the notice from the judge in mid-November of 2010, to when she wrote that same day that she would file an amended complaint for 60 days and explain the reasons for the delay. And then, two months later, she did serve an amended complaint. I think, in light of the EEOC procedure and the fact that those proceedings sometimes take a very long time, I think the danger of pregnancy that it causes is minimal at best. And, that's not going to go wrong. We haven't touched about factor number two. In the abusive discretion standard, the argument for why we would contend that this court can review the record and, you know, not act as non-linear quarterbacks in the judge's decision, but there wasn't a full analysis of this factor. This factor requires an analysis of the length of delay and the potential impact on judicial proceedings. The judge, in his memo in an opinion in August of 2011, simply spoke about the length of delay. He said that 48 days, it was a total of 168 days from filing the final quotes compared to the court's dismissal. And, cases show in this jurisdiction that that's not an unreasonable length of delay. There are lengths of delays that are much worse. That's the basis upon which we should rule. Well, the basis upon which you should rule is that the fact that it was the length of delay and the potential impact on judicial proceedings. The court discussed the length of delay. There was no discussion about the potential impact on judicial proceedings. What would you have liked the judge to have said? It's going to be a problem? What would you have expected? Truth be told, I think that's a good point. I think the consideration should be limited to the entire fact. I think the judge should have decided a bit differently, obviously. I think there should have been a decision. There should have been an analysis that there wasn't really that much of a potential impact on judicial proceedings. If it was handled in a way where it was acknowledged that the same exact day that the notice came out, she said, I'm going to submit my complaint for the 60 days. She's been honest with the court, and, you know, again, that's what I would propose. Factor number three, the reason for the delay, whether it was in control of the movement. She explained the reasons for the delay in her affidavit that she submitted. She acknowledged what I spoke about after receiving the U.S.C. file. She discovered supervising employees made false statements. At the 14th of her affidavit, she said that a number of complaints were going to be filed, although she's still waiting on limited information. This whole factor, I mean, wasn't in control of the plaintiffs. It was mostly in control of the plaintiffs' counsel. Even though counsel was honest in her briefing and said, you know, part of the rest of the plaintiff, part of the rest was the plaintiffs' counsel, it's mostly on the plaintiffs' counsel. And the last factor is whether the movement— How do we ever get to Poulos? Or do we not need to get to Poulos? That's just an alternate argument. It's an alternate argument. I think that you get to Poulos because under Rule 31, the six factors are supposedly to be addressed. And they were addressed, and they should have been addressed. If I found—let's say I was Judge Savino for a moment, and I found that there was excusable neglect, your clients get to go forward. Are you saying in that analysis I would also have had to go through the Poulos factors? Or are you saying that if I found, as Judge Simandl did, that there was no excusable neglect, I then have to go through the Poulos factors? You're asking me? Yeah, go ahead. I'd like an answer. Thank you. This is a totality of the circumstances. These are all equitable principles. I don't think that in the instance where the remedy was awarded in favor of my clients, that Poulos would have been absolutely required. But I do think that in drastic measure, where we're depriving these four parties of a human right on the actual merits of their case, I think the case law that I've seen states that if the case has been abandoned, then there's no need to go through Poulos. But this is a case where it's been, it hasn't been abandoned. It's been neglected. I don't even know out of respect for if it's been neglected. I think there's an attorney who's, I mean, I don't know how bad this is, but she had an ear to argue before the Third Circuit, and I don't think she's neglected. I think the history will show that she's obviously trying to advocate. She's done it in an awful way, in a way that we didn't have, and I don't think that that's inexcusable neglect. Thank you very much. We'll have you back on the phone. Thank you. Good morning. Good morning. May it please the Court, my name is Barbara O'Connell, and I represent Walker & Co. as the appellee in this matter. As the Court has already touched on, this matter involves an abuse of discretion by Judge Sam Handel. I believe that the case has many bright lines that will permit this Court to affirm Judge Sam Handel's decision on a variety of different theories, and obviously, as you touched on, the pioneer decision as sort of the roadmap here. It's clear that Judge Sam Handel made an equitable decision that was not abuse of discretion, that the four pioneer factors in the totality of the circumstances as an equitable decision pointed to, and he was well within his discretion to dismiss this claim. Clearly, the items are all time-barred. The statute of limitations had run on all the potential claims, regardless of when they were discovered. The EEOC record that had been generated, those statutes had also run. So there is no relation back, because the 120 days of Rule 4M had definitely already lapsed. The prejudice to Walgreen is not just the period of time of the service. I was the attorney at the EEOC, and it was not until January 25th of 2011 that I was mailed a copy of the complaint. Walgreens was never served. These four plaintiffs worked at various Walgreens in the state of New Jersey. They could have walked in and handed the complaint to any manager in Walgreens. It could have been sent to me. The EEOC fact-finding was in August of 2009? 2009, Your Honor. So this is the delay we have, and I agree. The EEOC can take as much time as they feel is necessary, but this is the delay my clients faced. We had the EEOC charge. We had a fact-finding in August of 2009, and then the right-to-sue notice of dismissal issued. Then there was 209 days from that to when the complaint was sent to me as Walgreens counsel. All of this that the Court is talking about, and that ad hocs are talking about, happened without Walgreens knowledge. It was all going on with Walgreens under the impression, and I would say the correct impression, that the claims are time-barred and there was not going to be federal court litigation, keeping in mind that a retail setting has a tremendous overturn of employees and that the complaint that was actually filed is 38 pages and 164 paragraphs. It has expanded enormously from what we discussed in fact-finding at the EEOC in August of 2009, and that's the prejudice. The prejudice is real, and it is something that my client would have real difficulty overcoming, especially now that we're talking about 2012, which I stand on not to be affirmed. So you essentially were in the dark for two years, or a little over two years, I presume is what I mean? Or not quite two years. Right, we definitely got the notice of the right for dismissal, I believe it was in April, and then 90 days brought us to June, which is when the complaint apparently was filed. Then it was from June until the following January that we were completely in the dark that there was any litigation pending. And as I say, the way that it is now pled is very complicated. I disagree, obviously, that there was excusable delay, because excuse is generally impossibility. You can't find the defendant you're trying to serve. There is no impossibility here. It was something that was well within the ease of being served, and the conscious decision that the panel has pointed out, a strategic decision to wait, is not excusable neglect. The thing that makes it even more egregious is the fact that Joseph Mandel sent a notice of call for dismissal, and he points out in his opinion that even with that almost not plea to serve them, but to say, this case is going away if you don't serve, there was a conscious decision made to not serve, and that defeats the issue of excusable neglect. The panel has clearly touched on the issue that the appellants themselves are in part responsible for the delay. I hear in the argument now by appellants' counsel that there's some revision in history there, but it was clear that it is the information that plaintiff's counsel needed from her clients that she is arguing caused this delay, and therefore both the movements and the movements' counsel are solely responsible for the delay. And the fourth pioneer factor is good faith. Apparently, good faith can have a few definitions. In Judge Mandel's case, he felt clear that good faith ended when he issued the notice of call for dismissal, that you can't argue good faith when he has sent a notice saying, please serve the complaint, basically, or I'm going to dismiss the case. Good faith would have required something more than just an affidavit saying, well, I don't want to do that now, I want to do something else. Judge Greenway asked a question of opposing counsel. Is it necessary or proper that the poorest factors be considered in a case such as this one? I think that in the decisions of this court, there's two district court decisions moving on a 4M situation that are quoted in our brief, Gephardt v. Borough of Island Heights and the AGG v. North Plainfield. Neither of them did a polis analysis. Now, whether those cases, they obviously were not appealed, but a polis analysis was not done there. Also, the five decisions of this court that deal with the issue of cases being abandoned don't require abandonment such that the tent is folded and the people go away. Exactly the kinds of things that we're talking about here where a plaintiff failed to comply with an order to file an amended complaint in the Asabuku v. Valnational case, no polis analysis. In Jones v. New Jersey Bar Association, dismissal without polis analysis where a pro se plaintiff failed to comply with a court order. And there are three additional cases. Even if this court says a polis analysis is required, if we do a polis analysis based on these facts, we're still talking about an equitable analysis. We're still talking about applying factors that are almost identical to the pioneer factors. And as we pointed out in the brief, the polis factors are the extent of the party's personal responsibility. We've touched on that. The prejudice to the adversary. We've touched on that. A history of dilatoriness. It is our argument that a failure to serve Walgreens for 209 days is a history of dilatoriness, particularly after the notice of call for dismissal was sent and received by plaintiff's counsel. The issue of bad faith is the same analysis. One factor that's slightly different in polis is the effectiveness of sanctions other than dismissal. I would argue that that's the same as the statute of limitations having lapsed in that the sanction other than dismissal of resurrecting this case doesn't resolve the prejudice that Walgreens will suffer in attempting to defend. What I agree with counsel is a very complicated for plaintiff employment discrimination case involving hundreds of occurrences that they claim over the course of years were sexual harassment. And the meritoriousness of the claims are defense. And as Judge Samandel pointed out, because we never saw an amended complaint, we don't know what the amendment would have been and whether it would have been bringing forth meritorious claims. Certainly, we feel that we have a meritorious defense in that we argue that the EEOC and the EEOC found there was no cause to believe that statutes were violated when they issued their notice of dismissal. So as a preliminary matter, having been down the road in the direct harassment claims without all the new claims that are in these hundreds of paragraphs, we have a meritorious defense. The last point that seems to have been made in Plaintiff's brief is that the standard of clearly erroneous findings of fact and misunderstanding of the applicable law, we actually agree on all the facts here. There is no erroneous finding of fact. I don't think we could argue that anything different happened. We're not here on a case where we have wildly divergent issues of fact. The complaint should have been served. It wasn't served. End of report. Misunderstanding of the applicable law, I don't think this is a very complex area of the law. I think it is crystal clear that what Judge Samandel did in his well-reasoned opinion is the appropriate thing. Of course, there is a presumption in favor of jointer claims, jointer of parties, bringing all remedies together. We're not suggesting that that isn't the case. And if an amended complaint was appropriate, it would have been appropriate. However, it's not appropriate when the case is so stale that it has been dismissed by the court after a notice of call for dismissal. In conclusion, Judge Samandel conducted a thorough review of this entire case, both the facts and the law. He gave the appellants notice and the opportunity to remedy the defect, and they did not. The appellants have not met the high standard of abuse of discretion, which will require them to show this court that no reasonable person would reach the same decision as Judge Samandel. And it is our request that his decision be affirmed. Thank you. Any other questions? Good. Thank you very much. Mr. Carter. Thank you, judges. I just wanted to address the PULIS issue, and you know I was questioning whether it's required. I say in this instance it is, and here are the cases cited by my colleague in the brief that say no PULIS analysis is required, and just understand the difference between those cases and these cases. This case is cited as Osibuco and Trans versus New Jersey Bar Association. Those are cases set for a position that no PULIS analysis is required. None of the appellants have effectively abandoned that case. Osibuco is a pro se plaintiff, a pro se litigant, who got a letter from a judge that said, file by this date or else, and he didn't. Jones is another pro se litigant who did not appear for deposition after the court gave him or his counsel several extensions to do so. Let's put those cases aside just for a moment. Sure. If I understand what you began to say when you were first up, it's depending on what the initial excusable neglect ruling is, you then have to go to the PULIS factors. I'm not aware of a case that says that. But take us through why that would be a logical way of proceeding. Because that's what you want us to do, right? If we had said excusable neglect, you'd say there's no reason to get to the PULIS factors, right? So the question is why in this circumstance, given the fact that you're moving pursuant to Rule 16, why then should we review what Judson has done and say it's error to have come to the determination pursuant to the rule that you moved and not then gone into what is essentially a redundant analysis in large measure? That's what I was going to say. There is overlap between the elements, but I think it makes sense to go to the PULIS analysis. And I don't have a case that says what you wanted to say. But I do have the cases in the negative which state when it should be abandoned. It should be abandoned in all those instances are pro se radios who basically defied court orders numerous times, which is much different and, if I can say it, much worse than what Stefan Retzel did in this case. And the reason why I think it matters is because if you look at the PULIS factors, even though there is the overlap, I think that they demonstrate that what the court's opinions in instances of the Pioneer and these types of matters, what happened here does not rise to that level. And the extent of the party's personal responsibility to prejudice the adversary, the history of readiness. The Parks v. Brown is a Third Circuit 2010 case where the party waited three years to file a complaint and a year to serve the complaint. And the court ruled that that's been a little bit late. Here, we're dwelling, and my colleague is dwelling on the time period, if I may just finish this point. My colleague is dwelling on the time period of how it's been two years that we've been left in the dark. But the real running time issue here is from June, when she filed the complaint, to November, when the judge issued the decision. And then from November to January, so in essence, those two months that are arguably longer is what's left in the dark. Thank you very much for your time. Thank you, Mr. Cole. The case was very well argued.